THE STATE ex rel. SCHOOL DISTRICTS NOS. 52 and 53 of CASS COUNTY et al., Plaintiffs in Error, v. LESLIE WRIGHT et al.

Division Two, March 16, 1917.

1. **CONSOLIDATED SCHOOL DISTRICT: Plat: Certainty.** Absolute mathematical certainty in lines and scale in the plats of a proposed consolidated school district required by the statute to be made and posted by the County Superintendent, who is not a surveyor and who is given no fund with which to cause a survey to be made, is not to be expected.

2. ———: ———: **Sufficiency: Purpose.** The plat of the proposed consolidated school district is sufficiently exact within the meaning of the statute if it shows the sections and subdivisions of lands in a manner sufficiently accurate to enable the ordinary citizen to ascertain from an examination thereof whether the boundaries of the proposed district will include his residence or lands so as to make him a voter and a taxpayer in the district. If it does that, and likewise enables the County Clerk to intelligently extend and the Collector to intelligently collect the taxes on the subdivisions of real estate included, it contains all that is necessary.

3. ———: ———: ———: **Bounded by River.** Whether or not the posted plats make the boundary line of the proposed consolidated school district cross the southeast corner of a certain section, or to run thirteen links from the corner, is immaterial, if a certain river or well-known water course is there made the boundary line.

4. ———: **Welfare of Adjoining Districts: Judgment of Superintendent.** In fixing the boundary lines in such a way as in the judgment of the County Superintendent "will form the best possible consolidated district," the statute leaves both the measure of the judgment and the quantum of due regard for the welfare of adjoining districts to his sound official discretion; and the sole way of correcting his exercise of a bad judgment and discretion is the rejection by the voters of the proposition to organize the consolidated district.

5. ———: ———: **Quo Warranto: Substantial Evidence.** A *quo warranto* to have declared illegal the attempt to organize a consolidated school district, is a law case; and if there is substantial evidence that the County Superintendent made effort to obtain facts upon which he might exercise his judgment as to the needs for the district and as to the welfare of the adjoining district, the finding of fact by the trial court that he did all the statute required is binding on the appellate court.

6. ———: Increased Taxes: Fraudulent Representations of Superintendent. Alleged fraudulent statements made to voters by the County Superintendent before the consolidated district was formed that their taxes would not be increased by its formation more than fifteen or twenty cents on the hundred dollars' valuation, has no place in a *quo warranto* brought against the directors to oust them on the ground that the district was not legally organized, for even if made they are no grounds for outlawing the district.

Error to Cass Circuit Court.—*Hon. B. G. Thurman,*
Special Judge.

AFFIRMED.

*Smith & Chastain* for plaintiff in error.

(1) The statute under which the district in question was attempted to be organized required the County Superintendent of Schools on receipt of a proper petition to perform these duties: (a) To visit and investigate the needs of the community; and (b) To determine the exact boundaries of the proposed district, doing this so as to get the best possible district, having due regard to the welfare of the adjoining districts. Laws 1913, p. 722, sec. 3. (2) To this provision of the statute effect should be given by the court, because not an impractical thing to be done, and no different intent can be found either expressed or implied in the act. Bank v. Repley, 161 Mo. 131; State v. Hunter, 188 Mo. 529. This effect will be given even if the court should be of opinion the requirement is an unwise one. Gist v. Construction Co., 224 Mo. 384. (3) These statutory requirements are necessary conditions precedent to the organization of a district; in fact, jurisdictional. State ex rel. v. County Court, 66 Mo. App. 101; State ex rel. v. Higgins, 71 Mo. App. 185; State ex rel. v. Siebert, 97 Mo. App. 212, 219; State ex rel. v. Page, 107 Mo. App. 217; State ex rel. v. Metzer, 26 Mo. 65; State ex rel. v. Wilson, 216 Mo. 277; State ex rel. v. Woods, 233 Mo. 377; State ex rel. v. Jones, 181 S. W. 51. (4) The undisputed evidence is that: (a) The exact boundaries of the district were never determined by the superintendent. Exact means

accurate, strictly correct, precisely ·fitting, not differing in the least. 2 Ency. Dictionary, p. 1962. (b) He did not investigate the needs of the community having due regard to the interests of adjoining districts. To investigate is to "examine and inquire into closely." 3 Ency. Dictionary, p. 2726. (5) The only "determining" of the boundaries of the district by the superintendent was the making of the plats, none of which were alike, but all agreed that at the southeast corner of section 9, Bates County, the map was inexact to the extent of more than thirteen chains. (6) The court erred in admitting the plats in evidence, because they did not show the boundaries of the district. Authorities under proposition one and two. (7) The court erred in excluding evidence as to fraudulent representations of the County Superintendent to the effect that the organization of the district would not increase taxation. State ex rel. v. Woods, 233 Mo. 337.

*C. A. Denton* and *W. E. Owen* for defendants in error.

(1) The statute providing for the creation and organization of consolidated school districts is a progressive act in keeping with the forward movement of the State and country at large, and before the court will declare the organization of a district under it invalid, or the law itself, the reasons therefor should be clear and unanswerable, and the court will scrutinize very closely all of the proceedings, and be fully satisfied that a clear case is made out against the legality of the organization of the district, as the ruling, if adverse to the district, prejudicially affects the rights and interests of the State as well as the inhabitants of the district and creditors thereof. State ex rel. v. Job, 205 Mo. 34; State ex rel. v. Westport, 116 Mo. 595; State ex rel. v. Gordon, 261 Mo. 649; Board of Commissioners v. Peter, 253 Mo. 520; State v. Baskowitz, 250 Mo. 82; State ex rel. v. Warner, 197 Mo. 656; State ex rel. v. McIntosh, 204 Mo. 602; State ex inf. v. Henderson, 145 Mo. 336. (2) No strict or technical construction is to be put upon

the statute authorizing the organization of consolidated school districts.  It was designed as a plain workable method for organizing larger districts with greater educational advantages, by plain, honest worthy citizens not specially learned in the law.  State ex inf. v. Jones, 266 Mo. 201; State ex rel. v. Job, 205 Mo. 34; State ex rel. v. Andrea, 216 Mo. 636; School Dist. v. Hodkin, 180 Mo. 79; School Dist. v. Pace, 113 Mo. App. 140; State ex inf. v. Morgan, 187 S. W. 57.  (3) The important thing for the voter in each district to know was how his district was to be affected by the creation of the new district, or by change of the boundary, and what particular territory is included in the new district, or what particular territory his district would lose in the creation of the new one, or by changing the boundary line.  State ex rel. v. Job, 205 Mo. 28; Mason v. Kennedy, 89 Mo. 30; School Dist. v. Sims, 193 Mo. App. 480.  (4)  The plat of the proposed consolidated school district made by the County Superintendent is the instrument designated by the statute to be posted for the information of the voters as the territory therein included.  And if it sufficiently gives this information it has served its purpose, and where permanent monuments like well defined watercourses are given as part of the boundary line, it will be a sufficient designation of such boundary.  Monuments control courses and distances called for. Laws 1913, p. 721; Campbell v. Clark, 8 Mo. 553; McGill v. Somers, 15 Mo. 80;  Kronenberger v. Hoffner, 44 Mo. 185;  Jones v. Poundstone, 102 Mo. 240; Whitehead v. Ragan, 106 Mo. 231;  Smith v. Catlin Co., 117 Mo. 438;  Harding v. Wright, 119 Mo. 1;  Johnson v. Boulware, 149 Mo. 451; Peterson v. Beha, 161 Mo. 513;  Clamorgan v. Railway, 72 Mo. 139;  Brown v. Huger, 21 How. 305;  State ex inf. v. Glaves, 186 S. W. 685.

FARIS, J.—This is a proceeding by *quo warranto*, filed by the prosecuting attorney of Cass County, at the relation of two certain school districts and some sixty-two tax-paying citizens of that county, against defendants in error here, who were defendants below, to oust

them from their offices as directors of a certain consolidated school district. The trial court refused to grant the writ of ouster and plaintiffs sued out and now prosecute their writ of error.

The action turns upon the question whether said consolidated school district was legally organized. There is but little dispute about the facts. Such of these facts as are necessary to an understanding of the points raised are substantially as follows: A petition containing the requisite statutory number of signers and which is conceded by plaintiffs to be sufficient in form and substance and sufficiently signed, was presented to one T. J. Walker, who was then superintendent of public schools of Cass County, requesting him to proceed officially under the provisions of the Laws of Missouri, 1913, page 721 et seq., to organize a consolidated school district in Cass and Bates counties, with the center of such proposed school district at or near the town of Archie in Cass County. Thereupon the County Superintendent personally went into the neighborhood to be affected and from which the territory to compose the proposed consolidated district would have to be carved, for the purpose of examining the situation. Touching his acts in this behalf, he says: "I went to see these citizens and talked the matter over with them; observed the country and the lay of the land and kept in mind the different boundaries that were to be included within the proposed consolidated district and kept in mind the territory that was to be embraced within the district, and later I took the plat and in my office laid out the boundaries, knowing as I did the boundaries of the district. I undertook to have in mind the welfare of the adjoining districts and that I must not cripple any adjoining districts or leave them in a condition where it would be impossible for them to have school facilities." This witness, who is not a party to this action in anywise, testifying as to the manner, nature and extent of his investigations, also said: "I went with Mr. Pitcher to Archie where we drove over a large part of the territory and talked with a lot of resident citizens whom I told, as I visited them,

what was my purpose; that I wanted to see the senti-
ment of the community as to whether they really wanted
a consolidated district and high school facilities, telling
them what in my judgment would be the advantages of
such an organization; to most of them I called attention
to the fact that there was at that time no high school
existing between Drexel and Garden City, in Cass Coun-
ty, a stretch of country perhaps twenty-five miles from
one town to another. Whenever a man expressed him-
self as favorable to it, I asked him if he would sign a
petition as an evidence of his good faith, and a great
many more were added, to the number of about sev-
enty.''

There is no controversy as to the sufficiency of the
notices, nor as to the posting thereof, nor as to the num-
ber of plats which were prepared by the County Super-
intendent and caused to be posted at the requisite stat-
utory number of places. These plats were roughly and
somewhat inartificially drawn upon blanks containing
numbered sections, townships and ranges, all of which
blanks were filled in as the situation required. The plats
as posted and filed show the southeast corner of the pro-
posed district to be on a certain creek, or water course,
known as Mormon Fork of Grand River, which point, the
testimony shows, was supposed to be coincident with the
southeast corner of section nine, though it developed
upon exact measurement that the southeast corner of
said section nine was some thirteen chains east of this
creek. Touching it, however, as well as regarding other
contested points, the County Superintendent says that
he was not personally acquainted with the lines bound-
ing the school districts affected in Bates County; that
he made inquiry as to all of these facts and afterward
prepared the plats by the exercise of his best judgment
as to what was the proper manner of running the lines.

The plat hereinafter set forth shows the inclusion
of an eighty-acre tract, which has the effect to produce.
a seeming inequality in the western boundary of this
district. The testimony of defendants, which was, in its
entirety as to the facts, corroborated by plaintiffs, shows

that this tract of land is vacant and uncultivated, and situate in a small, weak common school district. For these reasons the County Superintendent included the above tract in the consolidated district. Regarding a certain eighty-acre tract—seemingly on the easterly side of the watercourses which partly bounded the consolidated district on that side—and a two-hundred-acre tract, being all that was left of a certain common school district in Bates County, both of which tracts were omitted, the County Superintendent testifies as to the former that he might have included it if he had known the true facts, but that such omission was justified possibly by the fact that these watercourses often become impassable on account of floods. As to the omitted two-hundred-acre tract he says his best judgment was to omit it, which he did, and that this judgment would not have been changed by knowledge (which he did not have at the time) that it was all that was left of a former Bates County common school district. The record does not contain any sufficient evidence by which the alleged bad judgment of the County Superintendent is demonstrated, or the judgment upon which he acted in the three certain behalves mentioned is impeached.

The court, as stated, refused to oust the defendants, thereby holding, in effect, that the district was lawfully organized. This is the decisive question and the sole question sought to be settled by this proceeding. Other facts tending to illuminate it will be found in the opinion.

Looking at the brief filed by learned counsel for plaintiffs in error in the light provided by the terms of our Rule 15 (adopted April 10, 1916), we find only the below points mooted: (a) That the exact boundaries of the district were never determined by the County Superintendent of Schools; (b) The County Superintendent did not investigate the needs of the community with due regard to the interests of adjoining districts; (c) the court erred in admitting the plat in evidence, because it did not show the boundaries of the proposed district; (d) the court erred in admitting evidence that some of

State ex rel. v. Wright.

the individual plaintiffs participated in and voted at the special election; and (e) that it was error to exclude evidence that the County Superintendent made alleged fraudulent representations as to the additional cost in taxes which would be entailed by the establishment of the proposed consolidated district.

I. Coming to a consideration of the complaint that the exact boundaries of the proposed district were never determined by the County Superintendent, we note that seven plats were caused to be posted by this official.

**Plat.** These plats were headed: "Plat of Proposed Consolidated District No. 2, of Cass and Bates Counties." In the north margin thereof the ranges correctly numbered 31 and 32, respectively, and in the east margin the townships likewise correctly numbered 42 and 43, respectively, were shown, with the words "Cass County" written in said east margin under the words "Township No. 43." In the south margin, appeared the legend: "Scale 1 inch=1 mile." All of the above matters and things are omitted from the plats shown by plaintiffs in error in their abstract. In all other respects the above plat which we take from the abstract, is a true representation of the boundaries of said proposed district.

Learned counsel for appellants concede that the notices posted were in proper form and that the petition for the organization of the district was duly filed. The point as made goes to the sufficiency of the above plat. The alleged phase of inexactitude touching the plats is that these plats fail to show the boundaries of the district. The contention upon which this charge is bottomed, so far as we are able to gather, is that while the southeast corner of the district as the plat shows it, seems to be the southeast corner of a certain section nine, this is not the case in fact; because while upon the plat Mormon Fork of Grand River which actually forms the southeast boundary of the district, seems to cross the section line at a place coincident with the southeast corner of said section 9, it in fact crosses the south line of said section thirteen chains west of the southeast corner thereof. Regardless of this fact we yet think this plat, which we show above, was under the statute (Laws 1913, p. 722, sec. 3), a sufficient showing of the boundaries of the proposed district. It may be a matter of judicial regret that the above section of this act which designates all of the necessary statutory requirements of things to be done in order to lay out, organize and record a consolidated district, did not go more at length into the details of the procedure for such organization. But these things were for the Legislature and not for us.

Reference to the language of the act shows the only requirements of investigation and examination to be that: "On receipt of said petition, it shall be the duty of the County Superintendent to visit said community and investigate the needs of the community and determine the exact boundaries of the proposed consolidated district. In determining these boundaries, he shall so locate the boundary lines as will in his judgment form the best possible consolidated district, having due regard also to the welfare of adjoining districts."

While the above language is all that the act contains as to the initial manner of "determining" the boundaries, the context, we think, shows that the word "determine" is not used in its strict sense of "ascertaining to a mathematical certainty;" but it means that the County Superintendent shall "settle upon and decide" where such boundaries shall be. For it will be noted in determining these boundaries he is required to "so locate the boundary lines as will in his judgment form the best possible consolidated district." Neither the district nor the boundaries thereof are required to be surveyed, for no provision exists to pay for any surveying and none is mentioned in the act. The plats which are to be filed and posted are likewise, from the context, to be prepared by the County Superintendent. For while he may procure others to make them, it is yet made his duty to post them, and, since nothing is said as to paying any other person or officer for making these plats, the duty to make them, or to procure them to be made without incurring any expense therefor, clearly falls upon him. Since we know what the duties and the statutory requirements as to eligibility of a County Superintendent of schools are, we know that he is not required to be either a surveyor, a civil engineer or a skilled draftsman. Therefore we would not expect absolute mathematical certainty in lines and scale in the plats filed and posted by the County Superintendent. Such a plat is sufficiently exact within the meaning of the statute when it shows the sections and subdivisions

270 Mo.—25

thereof in a manner sufficiently accurate to enable the plain, ordinary citizen (State ex rel. v. Glaves, 268 Mo. 100) to ascertain from an examination thereof whether the boundaries of the proposed consolidated district will include his residence or lands so as to make him a voter and a taxpayer in the district. It follows that if a plat under this act does this much, and in so doing, it likewise enables the County Clerk to intelligently extend and the Collector to intelligently collect taxes on the subdivisions of real estate included, this is all that is necessary. We think the plat posted and filed and above shown did this. The error as to where the southeast corner of section nine is, affects the matter in no material way when viewed in the light of the objects intended to be accomplished. The Mormon Fork of Grand River is shown to be a watercourse and a permanent monument. Even the casual observer can see from the plat that the district runs for a southeast boundary line or corner, to this watercourse; that it includes all lands up to this creek and no more, and that the same is true of Grand River itself. No courses or distances are called for; if they were this creek would control and delimit such calls and form a natural monument even as against such calls. [Whittelsey v. Kellogg, 28 Mo. 404; Smith v. Catlin Land & Imp. Co., 117 Mo. l. c. 444.] Since these natural monuments form the southeastern and part of the eastern boundaries of the proposed district, it is evident that no lands which lie east of this creek and of this river are embraced within the district. So also it is not difficult to ascertain what sections or subdivisions of sections of land lie on the westerly side of these watercourses. Surely any voter may be presumed to know whether he lives and his land lies on the east side or the west side of streams like these. Besides, a mere reference to the above plat and a statement of the contentions of the learned counsel for plaintiffs show in the light of our recent rulings, that the point should be ruled against plaintiffs (State ex rel. v. Glaves, supra), which we accordingly do.

II. Coming to the contention that the County Superintendent did not sufficiently examine into the effect of the proposed consolidated district upon certain adjoining common school districts in Bates County: The statute which we quote above is, we repeat, regrettably meager in its details; it relegates the matter of fixing the boundaries of the district, that is, *the creation of the district itself,* to the judgment of the County Superintendent; it lays down no hard-and-fast rules, nor any certain method for him to follow, but within the limits of so locating "the boundary lines as will in his judgment form the best possible consolidated district," in the light of a "due regard for the welfare of adjoining districts," leaves both the measure of judgment and the quantum of due regard to the welfare of adjoining districts to the sound official discretion of the County Superintendent. The question of the correctness of the judgment exercised and the regard by him had to the welfare of adjoining districts is required (as the sole way of correcting his exercise of bad judgment and discretion) to be passed on by the voters at a special election held for this purpose. In this case the voters approved the district and its boundaries as an exercise both of good judgment and due regard. In addition, there was substantial testimony, which we set out in our statement of facts, that the superintendent made efforts to obtain facts on which, *caeteris paribus,* he might have been able to exercise the required statutory quantity of judgment and due regard. The learned trial court found from the facts shown that he did all that the statute required him to do. No instructions were asked or given; this is not an equity suit (State ex rel. v. People's Ice Co., 246 Mo. 168), so we are in this condition of the record, bound by the holding of the court *nisi.*

*Welfare of Adjoining Districts.*

III. It is contended that the trial court erred in refusing to admit proffered evidence that the County Superintendent made fraudulent statements as to the additional cost in taxation which would be entailed by the

formation and operation of the proposed
**Misrepresentation** consolidated district. This contention we
**as to Increased** think is erroneous both as to the facts
**Taxes.**
and the law. Some three or more wit-
nesses were permitted to state that representations were
made by the County Superintendent that the increased
cost by way of taxation to the owners of taxable prop-
erty to maintain the proposed consolidated district
would be only ten or fifteen cents on the hundred dol-
lars' valuation, but that the increase had run much
higher in some at least of the territory included. The
single objection made by plaintiffs to testimony of this
sort was sustained, because the question was leading.
Afterwards the matter was gone into fully and some
three or more witnesses testified about it. That any such
inquiry in a proceeding like this was wholly incompe-
tent, is manifest. The alleged fraudulent statements
were made, according to the witnesses, while the super-
intendent was "visiting the community" and endeavor-
ing to "investigate the needs" thereof. The petition by
which the move toward the organization of the district
was initiated had already been signed and filed. Con-
ceding for the sake of the argument that the County
Superintendent did hazard an erroneous guess as to the
additional cost which would be entailed and have to be
met by taxation, is that any reason why the district
should be declared outlawed? At most, what the super-
intendent did was to make predictions as to future con-
ditions, which it is averred time has not vindicated, and
that this was done in order to obtain votes in favor of
the district, when the matter should come to be voted on
at the special election. We apprehend that such a
ground would not avail even in an election contest. If it
could even in such an action become relevant, we might
view with alarm the grafting upon the right to hold an
office the condition that all of the ante-election promises
made should in the end eventuate, according to the strict-
est letter of each voter's memory. Such a view might
even be held eventually to extend to the platforms of
political parties and there work remediless havoc. But

be all this as may be, this is a collateral matter sought to be injected into a common law action; the County Superintendent is not a party, but a mere witness in the case; and since it is under the issues irrelevant, he could not be impeached by the inquiry, and for the reasons given in the analogous case of Carder v. Drainage District, 262 Mo. l. c. 555, and the case of State v. Newcomb, 220 Mo. l. c. 63, among many others that could be set down did not time and space forbid, this contention is disallowed.

IV. It was perhaps "immaterial and irrelevant," as the sole objection ran, that certain of the persons who are here objecting as relators participated in and voted

Relators. at the special election by which the district was organized. But this was the only objection made and the court *nisi* did not rule on the point at the time this objection was made, reserving his ruling thereon. He was never afterwards asked to rule, and has not yet ruled on it. So for both or either one of these reasons, we cannot review the point urged.

Other alleged errors reserved by us for discussion, are disposed of by what we have said on other but germane points. We find no error in the record, and hence affirm the case. All concur.