THE STATE ex inf. LAWRENCE BOTHWELL ex rel. ROY GRAY et al., Appellants, v. GEORGE C. SCHUSTER et al.

Division Two, December 15, 1920.

1. **STATUTES: Construed Together.** All laws, written and unwritten, of whatever sorts and at whatever different dates established, are to be construed together, contracting, expanding, limiting and extending one another into one system of jurisprudence as nearly harmonious and rounded as it can be made without violating unyielding or unwritten terms.

2. **CONSOLIDATED SCHOOL DISTRICTS: Boundaries.** By the Act of March 14, 1913, the boundaries of a consolidated school district are independent of and have no reference to the boundaries of common school districts. The formation of a consolidated district is dependent on a community of proper area or school enumeration alone, without reference to the boundaries of existing common school districts or counties.

3. ——: ——: **Existing School Law.** The method of fixing the boundaries of a consolidated school district prescribed by the Act

of 1913 is exclusive of any general provision of the then existing general school. law. Sections 10837 and 10842, Revised Statutes 1909, apply to a different kind of consolidated school districts from those authorized by the Act of 1913, and have no application to districts authorized by the later act, which are organized by an entirely different method.

4. ————: ————: ————: **Size of Remaining Districts.** A consolidated school district may be organized under the Act of 1913 notwithstanding, when a portion of the territory of a ·common school district is included within its boundaries, twenty persons of school age will not be left within such portion of the common school district as remains—a condition prescribed by Section 10837, Revised Statutes 1909. Said Section 10837 is not repealed by the Act of 1913, but said act recognizes that the remaining parts of an existing district, after a consolidated district is formed, may be insufficient to sustain a school, and provides for the annexation of the remaining parts to other districts.

5. ————: **In Two or More Counties.** The Act of 1913 provides for the organization of a consolidated school district embracing lands situate in two or more counties.

6. ————: **Discretion of County Superintendent: Welfare of Adjoining District.** The requirement of the Act of 1913 that the county superintendent, ·in laying out the boundaries of a consolidated school district, shall have due regard for the welfare of the adjoining districts, vests the superintendent with a discretion which is not reviewable by the courts. The statute does not prescribe any certain method to be followed, but requires him to so locate "the boundary lines as will in his judgment form the best possible consolidated district, having due regard for the welfare of the adjoining districts," and those words invest him without a sound official discretion which is not reviewable by the courts, and do not make available evidence to show that he did not exercise such "due regard." If his judgment has not been sound, it can be corrected only by the legal voters at the special election.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen,* Judge.

AFFIRMED.

*Ryan & Zwick* and *Randolph & Randolph* for appellants.

(1) The act approved March 14, 1913, which provides for the organization of consolidated school dis-

tricts is but a part of a general system of laws providing for the education of the youths of the state. And in determining the question as to what law applies we should take into consideration each and every statute that is a part of the school system and that throws light and is applicable to the question to be determined. (2) The Legislature that enacted the consolidated school district law recognized and expressed the fact that said act was not a complete law within itself and that to carry out the intent and provisions of said law it was necessary to go to the general school law of the state as embraced in Chap. 106, R. S. 1909. The Legislature specifically, by Section 1 of said act, provides that "all laws applicable to the organization and government of town and city school districts as provided in Article IV, Chapter 106, Revised Statutes 1909, shall be applicable to districts organized under the provisions of this act." Section 10881 provides that all the provisions of Section 10837 relating to the changing of boundary lines of common school districts shall apply to town, city and consolidated school districts. Section 10837 provides "that no new district shall be created or boundary line changed by which any district shall be formed containing within its limits by actual count less than twenty persons of school age or by which any district shall be left containing within its limits by actual count less than twenty persons of school age." In the attempted formation of Consolidated District No. 2 of Clinton County, the district in controversy, it was formed by changing the boundary lines and taking parts of Districts Nos. 30, 32, and Gower City District, of Clinton County, and Districts Nos. 30, 49, and 50, common school districts of Buchanan County; and in so changing the boundary lines of said common school districts and taking a part of the same the uncontradicted evidence is that there were not left in the remaining part of the district the number of children as required by said statute. Therefore, for this reason, said attempted consolidation

was void. State ex inf. v. Sweaney, 270 Mo. 690. (3) It cannot be said with reason that when the Legislature used the word "organization" in Section 1 of the act, it intended it to apply not to organization but to government and management of the school, for the Legislature used both the words "organization and government" and the word "organization" has a fixed, clear and well-defined meaning. Board of Supervisors v. Duke, 113 Va. 94; Copeland v. School Board, 215 Pa. 359. The word "organization" is clearly used in the sense of formation. State v. School District, 54 Minn. 213; State v. Powers, 5 S. D. 627; In re Sanders, 53 Kan. 191. (4) The law required Superintendent Sims to visit the community and investigate the needs and determine the exact boundaries of the proposed consolidated district and to so locate the boundaries as in the judgment of the superintendent would form the best possible consolidated district. In doing so the law required of her to have due regard also for the welfare of the adjoining districts. Under this law a discretionary power is given to the superintendent to locate the boundaries of the district and if this discretion has been honestly and reasonably exercised then her action is not subject to judicial inquiry. If, on the other hand, the evidence shows that no inquiry or investigation as to the needs of the districts were made, that no regard or thought was given to the adjoining districts, and that her action was unreasonable and arbitrary and resulted in injury to the public, then her act was subject to judicial review. State ex rel. v. Lafayette County Court, 41 Mo. 321; State ex rel. Kellerher v. School Board, 134 Mo. 296; State ex rel. v. Dryer, 183 Mo. App. 481; State ex rel. v. Adcock, 206 Mo. 256.

*H. K. White* and *R. H. Musser* for respondents.

(1) The constitutionality of the act is now unquestioned. State ex rel. Dist. v. Gordon, 261 Mo. 631; State ex inf. v. Morgan, 268 Mo. 272; State ex inf. v. Stouffer,

197 S. W. 252. (2) Section 5 provides for the annexation of parts of districts remaining after the formation of consolidated districts in a summary manner. State ex inf. v. Stouffer, 197 S. W. 252; State ex rel. v. Hill, 152 Mo. 238; State ex inf. v. Jones, 266 Mo. 198; Hislop v. Joplin, 250 Mo. 599; Copeland v. St. Joseph, 126 Mo. 431; Birch v. Plattsburg, 180 Mo. 413; State ex inf. v. Smith, 271 Mo. 177. (3) The determination of the boundaries of the district proposed by the petitioners is left by Section 3 of said act solely to the judgment of the superintendent, and the question of the correctness of the judgment exercised by the superintendent and the regard had for the welfare of the adjoining districts are required to be passed upon by the voters of that community within said district at the special election held solely for this purpose, and the measure of judgment or of due regard is solely vested in the superintendent and is not a judicial question. State ex inf. v. Gleaves, 268 Mo. 105; State ex inf. v. Stouffer, 197 S. W. 251; State ex inf. v. Jones, 166 Mo. 197; Gross v. Moreland, 190 S. W. 962; State ex rel. v. Sims, 201 S. W. 910. (4) If Mrs. Sims, Superintendent, committed any error of judgment in locating the boundaries of this district, that error, absent a showing that the approval of those boundaries by the voters was procured by deception and fraud, cannot be corrected by proceedings in *quo warranto*, and the private wrongs or grievances of the relators are not a matter to be inquired into by *quo warranto*. The State is the only aggrieved party, and unless it has been injuried thereby the writ should not be awarded. State ex inf. v. Duncan, 265 Mo. 34; State ex inf. Crow, v. Railroad, 176 Mo. 687; State ex inf. v. Stouffer, 197 S. W. 252; School Dist. v. District, 195 Mo. App. 504; State ex rel. v. Job, 205 Mo. 32; State ex inf. v. Fleming, 158 Mo. 563; State v. Weatherby, 45 Mo. 17.

MOZLEY, C.—*Quo warranto,* instituted by the Prosecuting Attorney of Buchanan County, at the re-

lation of Roy Gray et al., against respondents, in the circuit court of said county.

The action has for its object the ousting of respondents, viz., George C. Schuster, James M. Allison, Henry C. Ransdell, Earnest T. Smith, O. G. Singleton and J. C. Stark, from the office of school director of Consolidated School District No. 2, of Clinton and Buchanan counties. It is alleged in the petition that respondents are assuming authority to do so, and are acting as such directors, without authority of law; that the organization of said district was in violation of law and the election of respondents as directors therein was likewise unlawful.

Respondent's return pleads that the information does not state any facts upon which to base *quo warranto* proceedings, or in any way sufficient to give the court jurisdiction of the subject-matter or of the respondents. They further answer as follows:

"That on the 16th day of February, 1917, more than twenty-five resident citizens and qualified voters of the community of Gower, residents in each Clinton and Buchanan County, presented to Mrs. Anna L. Sims, the duly elected, acting and qualified superintendent of schools of Clinton County, their petition that she form a consolidated school district in said community and of parts of each county, and the said county superintendent did thereafter on the —— day of February, 1917, having jurisdiction thereof, visit the said community, investigate the needs of said community and determine the boundary lines for a proposed consolidated school district, locating said boundary lines as would, in her judgment, form the best possible consolidated district, having due regard also to the welfare of the adjoining districts, and having so determined the boundary lines, did on the 27th day of February, 1917, make a plat of said proposed consolidated district, and certified at said time to the county clerk of each Buchanan and Clinton County, and to the county superintendent of schools of

Buchanan County, Missouri, certified copies of said plat and petition of twenty-five and more resident citizens and qualified voters of said community, retaining the originals in her office.

"That also at said time said Anna L. Sims, county superintendent as aforesaid, did call a special meeting of all the qualified voters of the proposed consolidated school district for the purpose of considering the question of consolidation, said special meeting being called for two o'clock p. m. on the afternoon of Thursday, the 15th day of March, 1917, at the school building of the then Gower School District; that said special meeting was called by posting within said proposed consolidated school district, at public places therein, ten notices, stating in said notices the time, place and purposes of said meeting, viz:

"First, to organize a consolidated school district in this community, with boundaries as laid out on the plats posted.

"Second, to elect six school directors for said consolidated school district, two for three years, two for two years and two for one year, and that said meeting would commence at two o'clock p. m. on the date set, at the place mentioned therein, and the said notices so posted as aforesaid in public places as aforesaid were posted more than fifteen days prior to the date of the said special meeting, and at the time of posting said notices the said county superintendent did also post at five public places in said proposed district five plats of said proposed district, same also being done more than fifteen days prior to said special meeting, and all of said proceedings being had within thirty days after the filing with said Anna L. Sims, superintendent, as aforesaid, of the petition of twenty-five and more citizens and qualified voters of said community.

"That said Anna L. Sims, county superintendent, in person attended said special meeting, and at two o'clock p. m. on said 15th day of March, 1917, at the assembly

room of the Gower district school in Gower, Missouri, and brought thereto a plat of said proposed district, and at said time called said meeting to order; that there was assembled there the great majority, if not all, of the qualified voters resident of said proposed district, including all of the complainants in this proceeding residents therein, and that said meeting was organized by the election of A. J. St. John as chairman and J. Burch Saunders as secretary, and upon the ballot taken upon the proposition. 'To organize a consolidated school district in this community, with boundaries as laid out on the plats posted,' the ballots collected and announced by the tellers selectel for said purpose were: 'For organization, 108 ballots; against organization, 45 ballots;' whereupon the chairman announced that said resident citizens and qualified voters had by their majority vote duly created Consolidated School District No. 2 of Clinton County, Missouri, in accordance with the lines of the plats so posted and proposed.''

Respondents were duly chosen to serve one, two and three years, respectively, as directors. The proceedings of said special meeting were certified to the county clerks of Buchanan and Clinton County, and the superintendent of schools of each county.

That these things were done as pleaded in the answer is not denied, but, as above stated, it is insisted that they were done without authority of law and that the election of respondents as directors of said consolidated school district was in violation of law and their acts as such were void.

Said cause was tried at the May term, 1919, of said court and resulted in a judgment in favor of respondents and the dismissal of relators' petition. Motion for new trial was filed and overruled, and the cause was duly appealed to this court.

Judge Thomas B. Allen, who tried the case, handed down a written opinion, which is set forth in the bill of exceptions and as it meets our conclusion as to the

just disposition of this case, we take the liberty of setting it out and adopting it as our opinion. It is as follows:

"The Act of March 14, 1913, undertakes to provide for consolidated school districts which are essentially different from any school district previously known in this State. Concerning the act, Judge WOODSON, in State ex rel. v. Gordon, 261 Mo. l. c. 649, says:

" 'This act is progressive and in keeping with the forward movement of the State and country at large— bringing home better schools and higher grades of instruction, which the ordinary public schools do not teach, and are incapable of teaching on account of the lack of means to construct appropriate buildings and to employ competent teachers. By this scheme of the Legislature, thousands of our children can and will be instructed in the higher branches of education not taught in the ordinary school, who are unable to go to city high schools, colleges and universities away from home. The design of the Legislature is good and wise, and before the act conferring this beneficence upon the youth of the country should be declared invalid, the reasons therefor should be so clear and unanswerable that no reasonable doubt should exist as to its unconstitutionality.'

"In the above language we find expressed the estimate of the Supreme Court as to the new consolidated school districts, and a distinct emphasis that the appellate courts will, and the lower courts must, resolve all doubts in favor of such districts.

"The first contention arises on the construction of the new act. A guiding and certainly correct rule for construction of statutes is set forth in State ex rel. v. Gordon, 261 Mo. l. c. 649, quoting from Bishop on Written Laws, secs. 113a, 86, as follows:

" 'The completed doctrine resulting from a bringing together of its parts is, that all laws, written and unwritten, of whatever sorts and at whatever different dates established, are to be construed together, contracting, expanding, limiting and extending one another into

one system of jurisprudence as nearly harmonious and rounded as it can be made without violating unyielding written or unwritten terms.'

"We must, therefore, construe this act in harmony with the other written and unwritten laws of this State without violating unyielding provisions of the act itself. The very able counsel for relator earnestly contended, in effect, that this act must yield to have read into it portions of Section 10837, Revised Statutes 1909. And this must be done, unless the provisions of this act are unyielding; that is, clearly out of harmony and incon-sistent with said section of the Revised Statutes.

"Turning to the act we find that Section 1 begins with the provision that 'the qualified voters of any community in Missouri may organize a consolidated school district for the purpose of maintaining both elementary schools and high schools as hereinafter provided.' The Supreme Court, in State ex inf. v. Jones, 266 Mo. l. c. 196, defines the word 'community' as used in this act, to be neighborhood, vicinity, or people who reside in a locality in more or less proximity.

"Section 2 provides that 'no consolidated district shall be formed under the provisions of this act unless it contains an area of at least twelve square miles or has an enumeration of at least two hundred children of school age.'

"Section 3 provides, after detailing the necessary steps for organization of the consolidated district, that: 'The proceedings of this meeting shall be certified by the chairman and secretary to the county clerk or clerks and also to the county superintendent or superintendents of schools of all of the counties affected. If the proposed consolidated district includes territory lying in two or more counties, the petition herein provided for shall be filed with the county superintendent of that county in which the majority of the petitioners reside. The county superintendent shall proceed as above set forth and in addition shall file a copy of the petition and

of the plat with the county clerk of each county from which territory is proposed to be taken.'

"Section 5 provides that 'the inhabitants of the remaining parts of the districts may also annex themselves to any other adjoining district or districts by filing a petition asking to be so annexed.'

"Looking at this act, and especially the above provisions, which are all the provisions bearing on the quantum of a consolidated district, can the following cinclusions be fairly avoided, to-wit:

"First. The boundaries of a consolidated district are independent of and have no reference to the boundaries of school districts. The consolidated districts are carved out by the rule of community of proper area or school enumeration alone, without reference to school districts or county boundaries.

"Second. The method of fixing the boundaries of a consolidated district in the act is exclusive of any general provisions of the Revised Statutes for organizing school districts. This proposition strikes at the core of relator's contention. Relator's counsel very correctly state in their brief that 'each and every provision of said school law not clearly inconsistent with the terms of said act is still in full force and effect and must be given consideration when we come to construe the Act of 1913.' The test of the effect of a provision of a general statute on the present act is inconsistency. If consistent, it must be given effect. If inconsistent, then it cannot be given any consideration. Let us therefore fairly apply this 'acid test.'

"Counsel, in their brief, state the proposition in this way: 'On examination of the statutes there are two sections that bear directly upon the organization of consolidated school districts under such conditions, namely, Sections 10837 and 10842.' To what kind of consolidated districts do these sections apply? Obviously to the kind expressly authorized in said sections, which are organized by

Size of Remaining Districts.

an entirely different method from the method set out in the Act of 1913.

"That the consolidated district organized under Section 10837 is an entirely different scheme from the consolidated districts authorized under the Act of 1913 will be manifested by an examination of said Section 10837 and the new act. Instance the proviso of Section 10837, following specific provisions for the formation of new districts under that section, 'that no new district [that is, no new district organized under the provisions of that section] shall be created or boundary line changed by which any district shall be formed containing within its limits by actual count less than twenty persons of school age, or by which any district shall be left containing within its limits by actual count less than twenty persons of school age.' This provision clearly limits the creation of the new districts formed under said Section 10837 by providing that the new district shall contain not less than twenty pupils and no remaining part of any district shall be left with less than twenty children. Comparing this provision with the provision of the Act of 1913, we find that Section 2 of the act provides that the consolidated district shall contain not less than two hundred children or an area of not less than twelve square miles; and Section 5 contemplates that the remaining parts of districts may have less than twenty pupils, as shown by the following considerations:

"First. The consolidated district is measured by the rule of community of proper area or school enumeration.

"Second. The act does not mention any number of children that may be in the remaining parts of districts.

"Third. The act recognizes that the remaining parts of districts will or may be insufficient to sustain a school and provides for such remaining parts to become annexed to other districts.

"Fourth. Section 10837 provides for the forming of a consolidated district provided there be enough

left in the remaining parts of district to constitute under
the law independent school districts, to-wit, districts
containing not less than twenty children.

"If the consolidated district under the Act of 1913
is to be measured by the rule of community of proper
area or enumeration, to undertake to read into that act
that no part of a district may be taken unless twenty
children remain in the remaining part of the district
would impose a restriction on the act, and render mean-
ingless the provisions of the act as to annexing excluded
parts of districts to other districts. For why provide
for annexing to another district when such excluded
part is sufficient under the law to constitute a district
in itself? As such district, it could without this pro-
vision consolidate with another district. If twenty
children had to be left in the excluded parts, then it
might and would often happen that when adjacent dis-
tricts only had 20, 30, 40, or 50 children, a consolidated
district could not be created at all without including all
the districts, and such 'community' would be deprived
of the benefits of the new act. Again such organization
comprising all of school districts is already authorized
by law, and no act was necessary for such authority.
Concede that the boundaries in the present case con-
stituted a 'community' of proper area and enumeration
within the meaning of the act, then the act by its terms
authorizes such 'community' to become incorporated.
If we should hold that the community in this case, by
reason of having failed to leave twenty children in an
excluded part of a district, could not incorporate, would
not such a holding go into the teeth of the act? For
how can you say a 'community' may incorporate and then
say that by virtue of a prior provision it cannot in-
corporate? It seems clear that the provisions of Section
10837 are not in harmony and are inconsistent with the
act. It is not necessary that the act should repeal Sec-
tion 10837, for that section still remains the law as a
part of Article 3, Chap. 106, Revised Statutes 1909, but

it simply does not apply to the consolidated district as organized under the Act of 1913.

"Contention of counsel for relator that the act does not provide for the organization of consolidated school districts embracing lands in two or more counties, is not only answered by provisions of the act, but by the decision of the Supreme Court in the Wright Case, 270 Mo. 376, which sustained a consolidated district embracing land in Cass and Bates counties.

"The exact point is that the County School Superintendent of Clinton County did not do her duty under the law, in this: 'That she did not attempt to comply with even a semblance' of the requirements of the act that she have due regard for the welfare of the adjoining districts in laying out the boundary of the consolidated district. It seems true that the superintendent made but a short and hurried trip over the Buchanan County territory and the evidence indicates that she might have and perhaps should have taken more pains in discharging this important and responsible duty. It would further appear from the evidence that the boundary of the consolidated district could have been fixed so as to have greatly diminished the bad effect upon remaining portions of the districts affected, and in my opinion the establishment of the boundaries of this consolidated district actually worked a hardship upon the remaining parts of the school districts. But what is this court to do? Can this court grant relief in this case because of the unwise action of the county superintendent in the matter just mentioned? If it were in the power of this court to review the acts of the county superintendent and determine whether the boundaries of the consolidated districts were established with due regard to the welfare of adjoining districts, of course, this court would not hesitate to do so. But this court is bound hand-and-foot to follow the law as declared by the Supreme Court, and failure to do so would stultify the court and make it unworthy the confidence and respect of good men.

Superintendent's Discretion.

"The Supreme Court in the case of State ex rel. v. Glaves, 268 Mo. l. c. 104 and 105, has spoken in no uncertain language on this point, as follows:

" 'In forming the new district, common school districts were divided. It is insisted that the welfare of the excluded parts of such districts was not given due consideration. The statute does not make this a judicial question, but invokes for its settlement the discretion of the superintendent, in the first place, and then submits it, with the rest, to the voters at the election required to be held.'

"The acts of the superintendent were not set out in that case, and, as far as we know, the county superintendent may have utterly failed to have exercised a proper, or any, regard for the welfare of adjoining districts. If this matter is not a judicial question, how is this court to make it a judicial question?

"Again the Supreme Court in State ex rel. v. Wright, 270 Mo. l. c. 387, uses this language:

" 'Coming to the contention that the county superintendent did not sufficiently examine into the effects of the proposed consolidated district upon certain adjoining common school districts in Bates County: The statute which we quote above is, we repeat, regrettably meager in its details; it relegates the matter of fixing the boundaries of the district, that is, the creation of the district itself, to the judgment of the county superintendent; it lays down no hard-and-fast rules, not any certain method for him to follow, but within the limits of so locating "the boundary lines as will in his judgment form the best possible consolidated district," in the light of a "due regard for the welfare of adjoining districts," leaves both the measure of judgment and the quantum of due regard to the welfare of adjoining districts to the sound official discretion of the county superintendent. The question of the correctness of the judgment exercised and the regard by him had to the welfare of adjoining districts is required (as the sole way of correcting his exercise of bad judgment and dis-

cretion) to be passed on by the voters at a special election held for this purpose. In this case the voters approved the district and its boundaries as an exercise both of good judgment and due regard.'

"The court further says, in the same case and immediately following the above quotation:

" 'In addition, there was substantial testimony, which we set out in our statement of facts, that the superintendent made efforts to obtain facts on which, *caeteris paribus,* he might have been able to exercise the required statutory quantity of judgment and due regard. The learned trial court found from the facts shown that he did all that the statute required him to do. No instructions were asked or given; this is not an equity suit (State ex rel. v. People's Ice Co., 246 Mo. 168), so we are in this condition of the record bound by the holding of the court *nisi.*'

"Counsel for relator insists that the last quotation above recognizes the right and duty of the trial court to review the action of the county superintendent. It must be conceded that if all the Supreme Court had said on this subject had been contained in the last quotation, then indeed this court would be fully warranted in reviewing the action of the county superintendent, but when we take into account what the Supreme Court said in the Glaves case, above quoted, together with the fact that the court repeated substantially the same ruling in the Wright case, above quoted, to maintain that the Supreme Court meant to hold that it was the duty of the trial court to review the action of the county superintendent would clearly put the Supreme Court in the attitude of making contradictory decisions. It is noticed that the court in the Wright case, in referring to the fact that the trial court had reviewed the action of the county superintendent and that there was a substantial testimony to sustain the finding of the trial court, introduced that part of its opinion with the words 'in addition.' Is it not clear that in the Wright case the court intended to and did adhere to the ruling in the

Glaves case, namely, that the action of the county superintendent was not subject to judicial review, but simply said that, in addition to that principle and as another reason, there was substantial evidence to find that the county superintendent had due regard to the adjoining district? It is inconceivable that the Supreme Court meant to hold, especially in the same identical case and upon the same page, that this question was not subject to judicial review and that it was subject to judicial review. Such a construction would be ridiculous and absurd.

"In other words, there were two reasons in that case why the decision should go against relator on that point. First, that the matter was not subject to judicial review, and, second, that there was substantial testimony to the effect that the county superintendent had done his duty. Evidently either reason must have been sufficient upon which to base the court's ruling in that case.

"Suppose the testimony in the Wright case had not contained substantial testimony to sustain the action of the county superintendent, then there would have been left but one reason, namely, that that matter was not reviewable by the court. Could anyone imagine in the Wright case that if there had been a question about the action of the county superintendent the Supreme Court would not have declared the law on the question of judicial review the same as it did in that case and in the Glaves case? One good reason for the ruling was sufficient, and of course two reasons or a dozen reasons could not have changed the result of the effect of the one good reason."

The motion for new trial was properly overruled.

It only remains to affirm the judgment, which is accordingly done. It is so ordered. *Railey* and *White, CC.,* concur.

PER CURIAM.—The foregoing opinion of MOZLEY, C., is hereby adopted as the opinion of the court. All of the judges concur.