STATE OF MISSOURI at the Relation and to the Use of ORVILLE S. PARMAN, Ex Officio Collector of the Revenue In and For the County of Gentry and State of Missouri, v. E. J. MANRING, Appellant.— 58 S. W. (2d) 269.

Division Two, March 3, 1933.

236

*F. P. Stapleton* for appellant.

*C. E. Ernst, E. G. Robison* and *W. F. Seevers* for respondent.

FITZSIMMONS, C.—This case comes to the writer on reassignment. It is a tax suit by the State at the relation of the *ex officio* Collector of Gentry County, and raises the question whether certain land is in Consolidated School District No. 1 in Miller Township, Gentry County, and is liable for taxation for school purposes in that district. There was judgment for the collector for the full amount of the suit. Defendant by his appeal brings up the issue of the validity of so much of the judgment as covers the Consolidated School District taxes. He contends that his land is not in the consolidated district, that it is unincorporated territory and therefore is only liable for a school tax of forty cents on the one hundred dollars valuation.

The cause, by change of venue, went from Gentry County to De-Kalb County and was tried on an agreed statement of facts. By the agreement the parties admitted that Orville S. Parman was *ex officio* collector of the revenue of Gentry County, and that Gentry County legally adopted township organization. The other facts contained in the agreed statement were as follows:

"It is agreed that the defendant is the owner of the following described real estate in Miller Township in Gentry County, Missouri, Tract No. One, Lots Five and Six of the Northwest quarter of Section Seven, Township Sixty-one of Range Thirty. Tract No. Two, the south half of the southeast quarter of the northwest quarter and the northwest quarter of the southeast quarter of the northwest quarter of Section Seven, Township Sixty-one of Range Thirty.

"It is agreed that all the steps taken leading up to the assessment of said land and the extension of the tax were regular and legally taken, subject to the question as to whether or not said land was properly assessed in said Consolidated School District, No. One. It is further agreed that if said land was properly assessed in said District that the amount of taxes and the penalty and cost thereon as set out in plaintiff's petition is correct.

"It is further agreed that Consolidated School District No. One of Gentry County, Missouri, was organized on the 24th day of February, 1920; that Exhibit 1 hereto attached and made a part hereof by reference is the original plat of said Consolidated School District as voted upon and which was filed in the office of the County Clerk of said county. It is agreed that Exhibit 2 hereto attached and made a part hereof by reference is a plat of Section Seven, Township Sixty-one of Range Thirty, Gentry County, Missouri, showing the land in question and the location of Grand River in said Section.

"It is further agreed that the north boundary of said Consolidated School District where the same enters said Section Seven is Grand River and that the north boundary of said Consolidated School District where the same enters Section Twelve, Township Sixty-one of

Range Thirty-one (said Section 12 being immediately west of said Section 7) is Grand River.

"It is further agreed that prior to the organization of said Con- solidated School District, the land herein described was in School District No. 82 of said county, and that it was the intention of the county superintendent of schools of said county, who drew said plat, to include within the boundaries of said Consolidated School District all of said District No. 82, and it is further agreed that the petition filed with the superintendent of schools included said school District No. 82.

"It is further agreed that at the time of the organization of said Consolidated School District there was some question as to whether the land hereinbefore described was in said District No. 82, due to the fact that some time prior thereto said land had been assessed in an adjoining district across the said Grand River from said District No. 82, but that taxes even in those years was credited to and paid to the benefit of said District No. 82.

"It is further agreed that if said land consisting of 81.17 acres of unimproved land hereinbefore described is not in said Consolidated School District No. One, then it is the only part of said District No. 82 that is not included in the boundaries of said Consolidated School District.

"It is further agreed that the north and west boundaries of School District No. 82 in said Section Seven was Grand River."

It was further agreed that the grantor of the defendant, M. L. Manring, paid the consolidated district school taxes for the year 1920 in ignorance of the fact that the plat did not include said land; that said grantor paid the school taxes for 1921 under protest; that the defendant and his grantor for the years 1922, 1923, 1924, 1925 and 1926, made timely tender to the township collector of that amount which would have been due on said land for school taxes had the same been assessed as unincorporated territory, but that said tender was refused; that said tender has been renewed in said suit and has been refused; that if defendant's land is in Consolidated School District No. One, then the plaintiff should recover $407.61 for taxes and penalty and $40.08 costs, and that, if said land is not in said District then plaintiff should recover $113.72 for said taxes the amount tendered.

There was in evidence a notice of the superintendent of public schools of Gentry County calling a meeting of the qualified voters of the proposed consolidated District No. 1 for February 24, 1920, to organize the district "with boundaries as laid out on the plats posted" and to elect directors. The notice recited that it was in accordance with an act of the 47th General Assembly entitled: "An

act to provide for the organization of consolidated schools and rural high schools and to provide state aid for such schools.''

The act mentioned in the notice was approved March 14, 1913 (Laws 1913, p. 721). Section 5 of that act was amended by an act approved March 27, 1917 (Laws 1917, p. 509). This amendment bears upon the question for decision and it will be stated in its order. The eight sections of the Act of 1913 appear in the Revised Statutes of 1919 as Sections 11257 to Section 11264, inclusive, of Article 4, Chapter 102, entitled ''Laws applicable to City, Town and Consolidated Schools.'' The Revised Statutes of 1919 governed the organization in 1920 of Consolidated School District No. 1, Gentry County, and reference will be made to the sections of that revision in the examination of the question whether defendant's land is in that district. But for reference it may be said that the corresponding sections of the 1929 Revision are 9351 to 9358, both inclusive.

Section 11257, Revised Statutes 1919 (Sec. 1 of the Act of 1913) provides that the qualified voters of any community in Missouri may organize a consolidated school district for the purpose of maintaining both elementary schools and high school, ''as hereinafter provided.'' Section 11259, Revised Statutes 1919 (Amended Sec. 3 of the Act of 1913) provided that ''When the resident citizens of any community desire to form a consolidated district, a petition signed by at least twenty-five qualified voters of said community shall be filed with the county superintendent of public schools.'' It then became the duty of the county superintendent to visit the community, investigate its needs, determine the exact boundaries of the proposed consolidated district, and call a special meeting of the qualified voters of the proposed consolidated district. In preparation for this meeting, Section 11259, Revised Statutes 1919, further provided that the county superintendent ''shall make this call by posting within the proposed district ten notices in public places, stating the place, time and purpose of such meeting. At least fifteen days' notice shall be given and the meeting shall commence at 2 o'clock P. M. on the date set. The county superintendent shall also post within said proposed district five plats of the proposed consolidated district at least fifteen days prior to the date of the special meeting. These plats and notices shall be posted within thirty days after the filing of the petition. The county superintendent shall file a copy of the petition and of the plat with the county clerk and shall send or take one plat to the special meeting.''

The plat of the district mentioned in the county superintendent's notice and called Exhibit 1, in the agreed statement of facts, includes twenty-two whole sections of land amounting to 14.080 acres and parts of fourteen other sections through which the boundary line winds its way with many turns, off-sets and indentations. Descrip-

tions and quantities of the lands in these fourteen part sections so included in the district could not be stated from the plat, because courses and distances are not shown. The only measure is the legend: "Scale, 1 inch=1 mile," and obviously the plat exhibited in the record was reduced by photography. For this reason and for others that will appear we do not deem it necessary to illuminate this opinion with a reproduction of the county school superintendent's plat. As in the case of State ex rel. School Districts 52 and 53, Cass County v. Wright, 270 Mo. 376, 194 S. W. 35, the plat was roughly and somewhat inartificially drawn upon a blank containing numbered sections, townships and ranges.

The posted plat did not show any individual holdings of land in the consolidated district. Hence for the location of appellant's land reference must be made to Exhibit 2 of which the agreed statement of facts states: "It is agreed that Exhibit 2 hereto attached and made a part hereof by reference is a plat of Section 7, Township Sixty-one of Range Thirty, Gentry County, Missouri, showing the land in question and the location of Grand River in said section."

Defendant's case is that the line of the Consolidated School District as shown on Exhibit 2, starts into Section No. 7 from the North and in the center of the section. It runs south approximately 80 rods, thence west approximately 40 rods, thence south approximately 40 rods, thence east approximately 40 rods, thence south approximately 40 rods to the center of Section No. 7, thence west 160 rods to Section No. 12. All of the land of the appellant lies between this line and Grand River as shown on Exhibit 2.

Relator on the other hand contends that Grand River being the northwest boundary of common school district number 82 and the intention of the county superintendent of schools being to include all of said common school district number 82 in the formation of consolidated school district No. 1, then notwithstanding the apparent deviation of the line on the plat filed and posted by the county superintendent of schools from the actual location of Grand River, the difference being slight, and Grand River being a permanent monument of boundary, the presumption will prevail that the line of the plat follows the course of Grand River, since the act of the county superintendent of schools would have been in violation of the law should it be held that the line on the plat runs as contended by defendant.

We are of opinion that we should hold with relator that defendant's land is in consolidated district No. 1. Several reasons support this view.

First, the agreed statement of facts discloses that prior to the organization of the consolidated district, defendant's land was in common school district No. 82, and that it was the intention of the county

A copy of Exhibit 2 is as follows:

superintendent of schools, who drew the plat, to include within the boundaries of the consolidated district all of common school district No. 82. And this contention of the superintendent was also the pur-

pose of the people concerned. For the agreed statement further reveals that "the petition filed with the superintendent of schools included said school district No. 82." While the petition is not before us, it is to be observed that no presumption of its intention need be indulged. That document actually included all of district No. 82 and therefore defendant's land in that district.

■ The petition to which the agreed statement refers was signed by at least twenty-five qualified voters of the community expressing their desire to form a consolidated district, as provided in the first sentence of Section 11259, Revised Statutes 1919. This petition was the basis of the whole proceeding. This court in effect so ruled in State ex rel. Gault v. Gill, 190 Mo. 79, 88 S. W. 628. That was a *quo warranto* proceeding questioning the validity of the organization of a common school district into a village school district under Section 9861, Revised Statutes 1899. [Sec. 11237, R. S. 1919.] The proceeding was substantially the same as under Section 11259, Revised Statutes 1919, namely by petition of a stated number of qualified voters but addressed to the board of directors of the common school district. The directors in the case of State ex rel. Gault v. Gill, called the election required by the statute. But subsequently the directors withdrew the call and posted notices to that effect in place of the original notices for the election. But the citizens held the election, organized a village district, and chose as its directors the respondents.

This court upheld the validity of the proceedings, and, in its opinion, it thus emphasized the importance of the petition of the qualified voters (State ex rel. Gault v. Gill, 190 Mo. 79, 88 S. W. 628, l. c. 630) : "Nor do we think the validity of that organization was at all affected or impaired by the action of Gault and Young on the 23d of May, in ordering the notice of the election to be withdrawn and causing other notices to that effect to be posted. Upon receiving the petition of the fifteen qualified voters and taxpayers of the district, the law imposed upon the board of directors the purely ministerial duty of ordering an election and giving notice thereof in the manner prescribed by the statute, in the performance of which duty they were invested with no discretion, and when they had performed that duty they became *functus officio* in the matter, which then passed into the hands of the qualified voters of the district, and it was for them, and not for the directors, or any number of them, to determine how it was to be disposed of."

■ ■ This court has ruled several times that the consolidated school district statute must be liberally construed as a workable method employed by ordinary citizens, not learned in the law. [State ex inf. Barrett, Atty.-Genl., ex rel. Cutler v. Foxworthy, 301 Mo. 376, 256 S. W. 466, and cases there cited.] In the latter case which also

was a *quo warranto* proceeding, this court said of the purposes and intentions of the people (256 S. W. 1. c. 468): "The statute must be liberally construed as a practical vehicle to carry out the purposes of the people concerned. We must give effect to the evident intention of the voters if it can be done without doing violence to the language of the statute." In the instant case the agreed statement of facts shows that the qualified voters in their petition actually included defendant's land in the proposed consolidated district. It is true that, as has been ruled, the power conferred on the county superintendent of schools by Section 11259, Revised Statutes 1919, to determine and locate boundary lines of a proposed consolidated district calls for the exercise of a judicial or *quasi*-judicial function. [State ex rel. Fry v. Lee, 314 Mo. 486, 284 S. W. 129; State ex rel. Hanna v. Ross, 220 Mo. App. 388, 286 S. W. 726.] It thus appears that the duty of a school superintendent in locating boundary lines differs from the ministerial duty, to call an election. [State ex rel. Gault v. Gill, supra.] But in the instant case, as the agreed statement of facts shows, it was the intention of the superintendent to include defendant's land in the consolidated district. His intention therefore was in accord with the purpose of the qualified voters who, in their petition actually incorporated the land in the proposed district. If therefore, we should hold with defendant in this case we would not carry out the purposes of the people concerned.

Second. Another reason why the judgment should be upheld is that it will be presumed the county superintendent was familiar with all the sections of the law governing the organization of a consolidated school district. [State ex rel. Hanna v. Ross (Mo. App.), 286 S. W. 726.] In case a consolidated district should take in only a portion of a school district, Section 11261, Revised Statutes 1919 (amended Sec. 5 of the Act of 1913) defined the procedure for the omitted part of the district to annex itself to adjoining districts. An amendment to Section 11261, Revised Statutes 1919, adopted in 1917, to which reference has been made, is as follows: *"Provided,* that in the formation of any consolidated school district, as provided in this article, no district shall be divided unless the part left shall contain at least eight square miles of territory and twenty children of school age, or an assessed valuation of fifty thousand dollars and twenty children of school age." If the county superintendent, in fixing the boundaries of the consolidated school district, intended to and did divide district No. 82 by omitting from the consolidated district defendant's land, then the superintendent violated the quoted proviso of Section 11261, Revised Statutes 1919. For we take notice that defendant's land, in area 81.17 acres, does not contain eight square miles of territory. And as the agreed statement describes this acreage as unimproved land, we observe that it does not contain

twenty children of school age. And as relator's petition reveals that the highest amount of school taxes sued for in any one of the five years involved was $41.88 for tract one, and $25.88 for tract two, we see that the two tracts have not an assessed valuation of $50,000. Defendant's land, a part of district No. 82, could not have been left out of the consolidated district without a violation of the inhibition of Section 11261, Revised Statutes of Missouri 1919. The validity and regularity of the organization of the consolidated district is conceded by the statement of facts. We must then presume that the superintendent did not divide school district No. 82 in determining the boundaries of consolidated district No. 1.

 Third. This court has always taken a tolerant and excusatory view of county school superintendents' plats whenever their inaccuracies and defects have been called to our notice in actions involving consolidated school districts. The case of State ex rel. School Districts No. 52 and 53, Cass County v. Wright, 270 Mo. 376, 194 S. W. 35, was an action in *quo warranto* to test the validity of a consolidated school district. One of the grounds of the proceeding was that the exact boundaries of the district were never determined by the county superintendent of schools. It appeared that Mormon fork of Grand River, forming the southeast corner of the district, crossed a section line at a point coincident with the southeast corner of the section, according to the school superintendent's plat. In fact Mormon fork crossed the southern section line thirteen (13) chains or 858 feet west of the southeast corner of the section. This court ruled the objection against the relators. It held that the word ''determine'' as used in Section 11259, Revised Statutes 1919, with reference to the duty of the school superintendent to fix the boundaries of a proposed consolidated district is not to be used in its strict sense of ''ascertaining to a mathematical certainty,'' but, it means that the superintendent ''shall settle upon and decide'' where such boundaries shall be. The court observed that the statute makes no provision for a survey of the district or of its boundaries, but imposes upon the superintendent the duty to prepare the plats that are to be filed and posted Of the fitness of a county superintendent of schools for this work, this court in its opinion in State ex rel. School Districts, etc., v. Wright, supra, 270 Mo. 376, 194 S. W. 1. c. 37, said: ''Since we know what the duties and the statutory requirements as to eligibility of a county superintendent of schools are, we know that he is not required to be either a surveyor, a civil engineer, or a skilled draftsman. Therefore we would not expect absolute mathematical certainty in lines and scale in the plats filed and posted by the county superintendent.''

The case of State ex rel. Hilbert v. Glaves, 268 Mo. 100, 186 S. W. 685, was also a *quo warranto* proceeding aimed at the dissolution

of a consolidated district because, among other things, the plat which the county superintendent of schools had posted was inaccurate and erroneous. In this case there were in evidence two plats, nominally copies which had been posted. But, upon measurement it was found that, by reason of differences in irregular lines, one plat contained fifteen or twenty acres more than the other. This court in its opinion noted that this discrepancy was trivial in view of a total district area of over 16,000 acres.

There was no evidence of any fraudulent intent or that any residence was affected by the discrepancy, or that there was reasonable cause to believe that any voter had been misled to his prejudice. For this reason the sufficiency of the plat was sustained. In the instant case it may be noted that twenty-two whole sections in the district contain 14,080 acres and that parts of fourteen other sections which are also included have an area not ascertainable from the record but obviously large enough to place the total area of the district in excess of 20,000 acres. These cases involving plat irregularities are cited for the purpose of emphasizing that the plat in the instant case should not control the judgment of the trial court upon the issue of fact whether defendant's land was in the consolidated district, in view of the evidence factual and circumstantial in the statement of facts sustaining the judgment.

Fourth. Lastly, the question of fact whether defendant's land was in the consolidated district was for the decision of the trial court, unhampered by the agreed statement or by Exhibit 2. This exhibit, as the agreed statement says, is merely intended to show the land in question and the location of Grand River in Section 7. The agreed statement also lays down as a fact that the Grand River at the point where it enters Section 7 and also at the point where it leaves Section 7 and enters Section 12 is the north boundary of the consolidated district. But under the statement there remains as a question of fact for the decision of the court whether the Grand River, in its course through Section 7, or the line on Exhibit 2 to the east of the Grand River bounding defendant's land is part of the boundary of the district. The court by its judgment found in effect that the Grand River within Section 7 was the boundary line of the district and therefore that defendant's land was within the district.

There was substantial evidence to sustain the court's judgment. And since the appeal involves only a question of the sufficiency of the evidence, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.